**ROBSON et al. v. UNITED STATES.**

**UNITED STATES v. ROBSON et al.**

**No. 12995.**

United States Court of Appeals Ninth Circuit.

Nov. 26, 1952.

Hyman & Hyman, San Francisco, Cal., for appellant, Robson.

Ed Dupree, Gen. Counsel, Office of Rent Stabilization, Leon J. Liben, Asst. Gen. Counsel and Cecil H. Lichliter, Spc. Lit. Atty., ORS, Washington, D. C., for appellee.

Before HEALY, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

This action was brought to procure an injunction, restitution and treble damages under the provisions of the Emergency Price Control Act of 1942, as amended,[1] and the provisions of the Housing and Rent Act of 1947, as amended,[2] because of the alleged acceptance and receipt by the defendants of rentals in excess of the lawful maximum permitted under said Act and the rent regulations promulgated pursuant thereto. The United States recovered judgment for treble damages in the sum of $252, from which the defendants appeal. The United States took a cross-appeal asserting that it should have recovered from the defendants an additional $1297.50.

The record shows that the housing accommodations here in question, an apartment in a building containing some 15 separate apartments, was originally registered in the Area Rent Office about August 22, 1942, as a seven room apartment, at a monthly rental of $155. It did not include the use of a garage. About November 1, 1944, one de Veuve sought to rent the apartment and arranged with the defendant landlords to procure some additional facilities under his proposed lease. These included the use of a garage and an extra room in addition to the seven rooms previously listed. It appears that the additional room referred to was actually furnished to the tenant by partitioning off certain space on the ground floor of the building. This space had previously been a part of an area used for "maids' rooms" but the testimony showed that de Veuve wanted the space for storage purposes only; that it was not contemplated that it be used as a maid's room. Following the execution of a lease to de

Veuve of the eight rooms plus garage, at a monthly rental of $180 per month, the defendants filed in the Area Rent Office a second registration statement describing the leased housing accommodations as an eight room apartment with garage and the rental as $180 per month. This new registration bore a filing date of November, 1944. The regulations then in effect provided for such a registration where the housing accommodations were changed.[3] At some date subsequent thereto, an employee of the Rent Office wrote upon the document the words "an added room for maid included in rent". There is no showing as to when or how this was added except that it was not a part of the document as filed. The registration statement recited that "the acceptance for filing of this registration statement does not signify the approval of the Area Rent Office of rental or other conditions. Such rental is subject to revision and review."

Thereafter the tenant continued to occupy the accommodations mentioned in the later registration statement, and in the lease, and on January 18, 1949, the Area Rent Director made an order adjusting the maximum rent stated in this document, reciting that after consideration of all the evidence in the matter he had determined that the maximum rent for the housing accommodations referred to should be changed from $180 per month to $193 per month because a substantial operating loss was established. The order was made effective as of December 15, 1948.[4] The lease was for a single month and occupancy continued, apparently from month to month, until May 25, 1949.

On July 12, 1949, after the lease had terminated and the tenant had ceased to oc-

1. 50 U.S.C.A.App. § 904.

2. 50 U.S.C.A.App. §§ 1891–1902.

3. Section 4(e) of Rent Regulation for Housing effective September 13, 1944, (9 Fed.Reg. 11336), provided that for "housing accommodations changed on or after such effective date [of regulation] so as to result in an increase or decrease of the number of the dwelling units in such housing accommodations", the maximum rent shall be "the first rent for such accommodations after the change". It

provided: "Within 30 days after so renting the landlord shall register the accommodations as provided in Section 7". The 8-room apartment was rented to de Veuve on November 1, and the registration followed on November 24, 1944.

4. While one of the two lessors testified that the $193 per month was subsequently paid, it was stipulated that the amount actualy collected was $180 per month. The court found the amount to be $180 per month, and no exception is taken to that finding.

cupy the premises, there was mailed to the landlord a notice referring to this apartment and reciting: "Upon reinvestigation of the above matter in which an order was entered on January 18, 1949, the Rent Director proposes: To modify said order as it was based on an incorrect registration. The legal maximum rent was, in fact, as determined in docket J–2719–D as $155.00 per month, and therefore, the Rent Director proposes to adjust the maximum rent from $155.00 to $168.00. The order of modification will be effective as of December 15, 1948, the effective date of said prior order."

It will be noted that the order of January 18, 1949 was the order increasing the rent from $180 to $193. No explanation was given of what was meant by "docket J–2719–D" although upon subsequent inquiry by defendants' attorney the Area Rent Director advised that "that docket was established solely for the purpose of inspection of the housing accommodation * * * and is simply a matter of interdepartmental procedure within this agency neither the landlord nor the tenant is advised of that proceeding."

The July 12, 1949 notice quoted above contained a further paragraph advising that "in the event you wish to file a statement and supporting evidence with regard to the action quoted above your statement and supporting evidence should be filed within seven days of the date of this notice." The record shows and the court found that no statement, notice or objection was ever presented within the time mentioned or at all. It will be noted that the notice referred to was not particularly enlightening. The last previous information which the landlord had received was of the January 18 order increasing the rent to $193. Now he was in effect informed that the maximum rent was to be fixed at $168, the recital being that the legal maximum rent was determined at $155 per month in the unknown "docket J–2719–D" proceeding.

We assume that the landlord would be given to understand that this was a proposal to enter a retroactive order of some kind fixing the legal maximum rent at $168 as of the previous December 15. Pursuant to that notice the proposed order was in fact made on August 29, 1949 purporting to change the maximum rent from $155 per month to $168 per month, effective December 15, 1948. Nothing in this order or in the preceding notice thereof recites that the Area Rent Director proposed to cancel, nullify or hold for naught from the beginning, the registration statement of November, 1944 under which rent had been paid and the landlord had been operating for the past four and one-half years. While the order purported to be retroactive to December 15, 1948, it did not purport to have any retroactive operation prior to that date.

In the meantime, however, and under date of July 25, 1949, an employee of the Area Rent Office, signing as "Registration Supervisor", wrote the landlords as follows: "We are voiding the registration dated November 24, 1944 for the subject premises as we already have a 1942 registration on file. Physical inspection of the subject premises reveals that there is no maid's room added, but merely storage space in the basement. Enclosed you will find Forms D–1 on which you may petition for an increase in rent for added garage space under Section 8255(a) (3) of the regulations." At most this statement amounted to an assertion that the registration of November, 1944 was void for the reason that an inspection revealed there was no maid's room added. This is not a notice of any proposed action, and so far as the subject matter of this suit is concerned, it would appear to be but an expression of the views of the rent office as to something which had transpired in the past, for at that time the tenancy here in question had long since ceased.

Examination of the applicable regulations discloses that this July 25 letter was clearly a mere expression of opinion, and not an administrative action. The regulations then in effect provided that the Director might, in a proper case, "enter an order on his own initiative", but such an order was subject to two limitations. Before the action was taken, the Director was required to "serve a notice upon the

landlord * * * stating the proposed action and the grounds therefor." The other limitation was that such action must be taken by the "Area Rent Director".[5]

The subject matter of the letter was something debatable. As previously stated the registration statement when filed made no reference to a maid's room. The reference to such a room later appearing thereon was inserted by an employee of the Area Rent Office who was not called as a witness. The circumstances of the insertion of that language were not shown. The landlord testified at the trial that the extra room furnished to de Veuve was just what the latter wanted; that it served his purpose, and that although the room had in the past been used as a maid's room, it was not contemplated that it would be such under de Veuve's occupancy. These would have been matters properly inquired into had the Director undertaken to make an order in the premises, and given notice accordingly, and as required by the regulations.

We think therefore that the net effect of all these rather confusing orders was that on receipt of the July 12, 1949 notice the landlord was advised that the Rent Director was about to adjust the maximum rent retroactively to $168 per month as of December 15, 1948. Whatever view may be taken of the Rent Director's power to make a downward revision of a rent registration retroactively and after the tenancy has terminated, it is clear that the landlords here did not take advantage of the notice giving them an opportunity to seek administrative relief by the presentation of a statement and supporting evidence.

Upon this appeal the appellant landlords contend that they were improperly denied notice and an opportunity to be heard; that

the evidence does not warrant a finding that the November, 1944 registration was false, and that the maximum legal rent for the apartment was never legally reduced. The same regulation which authorized the November, 1944 registration (§ 4(e), referred to in note 3, supra), provided that the Administrator "may order a decrease in the maximum rent as provided in section 5(c)". This regulation was carried forward by the regulations issued under the 1947 Act.[6] That notice and opportunity to be heard was given, we have seen. We are not required to pass upon the regularity of the Director's action, for it is clear that these appellants did not exhaust their administrative remedies.

The net effect of this is that the defendants must be deemed to have collected an excess of $12 per month from December 15, 1948 until the end of the tenancy on May 25, 1949. Treating fractions of months as full months, this would mean an overcharge of $12 a month for six months or a total of $72. Obviously, the collection was not willful, for the order was not made when the rent was paid. Hence the recovery is limited to the overcharge alone. Title 50, App. § 1895.

For the reasons here indicated we think that the amounts of rents collected prior to December 15, 1948, which were in accordance with the registration statement of November, 1944, must be taken to be within the maximum rents provided for by the regulations.

We express no opinion as to whether, under the regulations then in effect, the appropriate official might, at this late date, have reduced, retroactively, and as of the date thereof, the maximum rent stated in the November, 1944, registration statement.[7] The significant thing is that neither

5. Regulations Relating to Priority-Constructed Housing and Rent Control, Code of Federal Regulations, 1949 Edition, Title 24, Chapter VIII, p. 449, § 840.7: "Action by the Area Rent Director on his own initiative. In any case where the Area Rent Director pursuant to the provisions of a maximum rent régulation, deems it necessary or appropriate to enter an order on his own initiative, he shall before taking such action, serve a notice

upon the landlord of the housing accommodations involved stating the proposed action and the grounds therefor. The proceeding shall be deemed commenced on the date of issuance of such notice."

6. § 825.4(a), Code of Federal Regulations, 1949 Edition. Title 24, p. 282.

7. Suggestive of doubt on this point is the provision in § 825.5(c) of the Regulation cited in note 5, supra, under the head-

the Director nor the Expediter purported to do so, and since they did not set it aside, we cannot treat it as a nullity.

Accordingly, it is ordered that the judgment of the trial court be modified by reducing the amount of the judgment awarded against the defendants to the sum of $72 and that as modified said judgment be affirmed.

ing "Grounds for decrease of maximum rent", that "The landlord shall have the duty to refund only if the order under this section is issued in a proceeding

commenced by the Expediter within three months after the date of filing such registration statement."